IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DOUGLAS HARRIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-CV-2095-DWD |
| | ) |
| **MONSANTO COMPANY et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

This case is before the Court for case management. The instant case was originally filed in the Southern District of Illinois in July 2016, was transferred to the Roundup Products Liability Litigation MDL in the Northern District of California, and was recently remanded to this Court for trial following the MDL court's Suggestion of Remand after completion of pretrial proceedings. (Doc. 68). Plaintiff has filed a motion seeking an order setting the case for trial as soon as possible. (Doc. 77). Monsanto does not oppose the request to set a trial date but asks that trial be scheduled no earlier than January 2027, citing the Supreme Court's January 16, 2026 grant of certiorari in *Monsanto Co. v. Durnell*, No. 24-1068, 2026 WL 120678, at *1 (U.S. Jan. 16, 2026), and the need to complete additional discovery. (Doc. 78). Plaintiff has filed a reply. (Doc. 79).

For the reasons that follow, the Court concludes that setting this matter for trial after the Supreme Court issues its decision in *Durnell* best serves the interests of judicial

economy and fairness to the parties. Accordingly, the Court will, by separate order, set this case for trial in 2027.

## I.     BACKGROUND

The Roundup Products Liability Litigation MDL (*In re Roundup Products Liability Litigation*, MDL No. 2741) was established in October 2016 in the Northern District of California to centralize federal cases alleging that Monsanto's glyphosate-based herbicide, Roundup, causes non-Hodgkin lymphoma ("NHL"). (Doc. 68). The MDL was prompted by the International Agency for Research on Cancer's March 2015 classification of glyphosate as "probably carcinogenic to humans," based on studies linking glyphosate exposure to NHL. (*Id.*). Plaintiffs primarily assert failure-to-warn claims, alleging that Monsanto knew or should have known of the cancer risk but failed to provide adequate warnings, as well as related design-defect claims that Roundup is unreasonably dangerous. (*Id.*). Thousands of cases have been filed and transferred to the MDL. Bayer, which acquired Monsanto, began settling claims in 2020, while non-settled cases have proceeded through coordinated pretrial proceedings in successive trial waves. (*Id.*).

This case was originally filed in the Southern District of Illinois on July 20, 2016 and was transferred to the MDL shortly thereafter as part of the seventh wave of cases selected for trial preparation. (Doc. 68). Discovery was completed, Monsanto's *Daubert* motions were denied, and the case did not resolve through settlement. (*Id.*). It was therefore remanded to this Court for trial. Plaintiff's claims mirror those tried in the MDL's bellwether cases, particularly *Hardeman v. Monsanto*, which was tried in 2019 and focused on general and specific causation of NHL, failure to warn, and product defect.

(*Id.*). The jury returned a verdict for the plaintiff on causation and awarded compensatory and substantial punitive damages following a bifurcated second phase. (*Id.*).

The Ninth Circuit affirmed the liability and damages rulings in *Hardeman*. *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021). Monsanto sought certiorari, arguing that the claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), but the Supreme Court denied review in June 2022.

Since that time, a circuit split has emerged on whether FIFRA preempts state-law failure-to-warn claims based on labeling where the Environmental Protection Agency has not required the warning at issue. The Ninth Circuit in *Hardeman* held that such claims are not preempted, while the Third Circuit later reached the opposite conclusion in a subsequent Roundup case. *Schaffner v. Monsanto Corp.*, 113 F.4th 364 (3d Cir. 2024). In light of this developing split, the MDL court observed in its Suggestion of Remand that, if the Supreme Court were to grant certiorari in a case presenting the preemption issue, "it will be worth discussing with the parties whether the case should be stayed pending a ruling on preemption."(Doc. 68).

On January 16, 2026, the Supreme Court granted certiorari in *Monsanto Co. v. Durnell*, No. 24-1068, limited to the question: "Whether the Federal Insecticide, Fungicide, and Rodenticide Act preempts a label-based failure-to-warn claim where EPA has not required the warning." *Monsanto Co. v. Durnell*, No. 24-1068, 2026 WL 120678 (U.S. Jan. 16, 2026). A merits decision is expected by the end of the Court's current term in June 2026. (Doc. 78).

## II.     DISCUSSION

Plaintiff argues that the case has been fully worked up after nearly a decade of litigation, that discovery is complete, and that no further discovery is necessary. He contends that the narrow question accepted for review in *Durnell* will not affect this case, particularly in light of existing Supreme Court precedent such as *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), and because at least three of his claims are not implicated by the *Durnell* issue. Plaintiff maintains that the Court should apply the law as it currently stands and set an immediate trial date to avoid further delay for a plaintiff who has already waited nearly ten years. Monsanto asserts that the Supreme Court's forthcoming decision in *Durnell* will directly control the viability of Plaintiff's failure-to-warn claims, may require dismissal of those claims, and will significantly affect the scope of admissible evidence at trial. Monsanto further notes that other courts have already stayed Roundup trials pending the *Durnell* decision in the interest of judicial economy and efficiency, and it requests a 2027 trial setting to allow time to assess the ruling's impact, update medical records, complete any additional discovery, and refresh expert disclosures and pretrial motions.

Although neither party formally seeks a stay, the Court's authority to manage its docket and set a trial date is guided by the same considerations that inform stay decisions. *See Texas Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005). Courts evaluating whether to delay proceedings pending a potentially dispositive ruling generally consider whether doing so will (1) unduly prejudice the nonmoving party, (2) simplify the issues and streamline trial, and (3) reduce the burden of litigation on the

4

parties and the court. *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016).

Applying those considerations here, the Court finds that setting trial after the Supreme Court's decision in *Durnell* will simplify the issues and reduce the burden of litigation on the parties and the Court. The Supreme Court granted certiorari to resolve a conflict among courts concerning the scope of FIFRA preemption. That conflict now includes the Ninth Circuit's decision in *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021), and the Third Circuit's contrary decision in *Schaffner v. Monsanto Corp.*, 113 F.4th 364, 398–99 (3d Cir. 2024).

Although *Durnell* arises from a Missouri state court decision, *Durnell v. Monsanto Co.*, 707 S.W.3d 828 (Mo. Ct. App. 2023), the Supreme Court granted certiorari to resolve this same conflict over the proper interpretation of FIFRA's preemption clause. The Court's review is therefore directed to a question of nationwide significance that has divided both federal and state courts. If, as Plaintiff contends, existing Supreme Court precedent already dictated the outcome, such a conflict could not exist, and Supreme Court review would not have been warranted.

The Court is also mindful that this action has now been remanded to the original transferor court for trial. At this stage, federal questions are governed by the law of the circuit in which the trial court sits, subject to the law-of-the-case doctrine for issues previously decided by the MDL court. See *McMasters v. United States*, 260 F.3d 814, 819–20 (7th Cir. 2001); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993); *Murphy v. F.D.I.C.*, 208 F.3d 959, 965–966 (11th Cir. 2000); *In re Korean Air Lines Disaster of Sept. 1,*

*1983 (Korean Air Lines), 829 F.2d 1171, 1176 (D.C. Cir. 1987)*; § 3867 *Law of the Case Doctrine and the Effect of Transfer and Remand on Choice of Law,* 15 Fed. Prac. & Proc. Juris. § 3867 (4th ed.).

The Court also notes that it cannot accommodate an immediate trial setting. Nor has Plaintiff shown that a trial in 2027 will cause irreparable or substantial prejudice. By contrast, proceeding now without the benefit of controlling guidance on a central question of federal law risks inefficient proceedings and potentially unnecessary post-trial motion practice or retrial.

For these reasons, the Court concludes that setting this matter for trial after the Supreme Court issues its decision in *Durnell* best serves the interests of judicial economy and fairness to the parties. The Court will, by separate order, set this case for trial in early 2027.

Once the trial date is set, the parties shall meet and confer and submit a proposed case management and scheduling order within fourteen (14) days. The proposed order shall identify any remaining discovery, expert updates, motion practice, or other pretrial deadlines the parties agree are necessary in advance of the 2027 trial date, as well as any areas of disagreement for the Court's resolution.

**SO ORDERED.**

Dated: February 10, 2026      /s/ *David W. Dugan*

                                                                         DAVID W. DUGAN
                                                                         United States District Judge